IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MILLENNIUM HEALTH, LLC;                          Civ. No. 3:20-cv-02035-HZ

               Plaintiff,                          **OPINION & ORDER**

     v.

DAVID BARBA; JUSTIN MONAHAN;
NEPENTH LABORATORY SERVICES,
LLC; DOES 1-5,

               Defendants.
_____

HERNANDEZ, Chief Judge

    This matter comes before the Court on a Motion for Preliminary Injunction filed by
Plaintiff Millennium Health, LLC.  ECF No. 53.  An evidentiary hearing was held on March 4,
2021 and March 17, 2021, at which the Court heard testimony and argument by the parties.  ECF
Nos. 54, 65.  For the reasons set forth below, Plaintiff's Motion is GRANTED.

## LEGAL STANDARD

    A preliminary injunction is an "extraordinary remedy that may only be awarded upon a
clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 22 (2008).  A plaintiff seeking a preliminary injunction must show (1) that he or she
is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence
of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction
is in the public interest.  *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## BACKGROUND

### I.      Factual Background

### A.  Millennium Health Services, LLC

Plaintiff Millennium Health, LLC ("Millennium") is a clinical drug testing and pharmacogenetic testing company based in California. Compl. ¶¶ 13, 17. ECF No. 1. Millennium operates a "full-service, complex clinical laboratory," used by "substance-use disorder and pain management providers to obtain objective information about patients' recent use of prescription medications and/or illicit drugs." *Id.* at ¶ 17. Millennium has a national presence and "processes hundreds of thousands of patient specimens each year." *Id.* at ¶ 19.

"Millennium promotes and sells its products and services directly to physician practices and treatment centers through a nationwide network of highly-trained sales professionals." Compl. ¶ 27. "Customer relationships in the clinical drug and pharmocogenetic testing business are long-lasting and are the result of enormous investments of time and capital." Supp. Knee Decl. ¶ 4. ECF No. 27-3. As a result, Millennium's success and competitive position depends "on the strength of the relationships it develops with its customers," and so its salespeople serve as "the

face of Millennium and cultivate the company's valuable business relationships."  Compl. ¶ 27.

Millennium salespeople are given access to trade secrets and confidential business information

"including, but not limited to, customer lists, customer contacts, information concerning

profitability of individual client accounts, business methods, techniques, means of operation,

strategies, research and development, and business relationships that Millennium dedicated its time

and resources toward developing and maintaining, including relationships with existing and

potential customers, referral sources and vendors."  Knee Decl. ¶ 9.  ECF No. 2-6.

Millennium's operations in Oregon are divided between two territories called "Portland

North," and "Portland South," which together cover the entirety of Oregon and part of Washington

around the city of Vancouver.  Knee Decl. ¶ 3.  Each territory is overseen by a single Territory

Manager, who serves as the "Oregon face of Millennium."  *Id.* at ¶ 13.  Territory Managers are

given "extensive training" about the drug testing industry, and "Millennium's technologies, know-

how, products, services, payor strategies and information, research and development efforts,

competitive intelligence, target lists and data on prospective customers, and sales."  Compl. ¶ 33.

Territory Managers also have knowledge of and access to Millennium's trade secrets and other

confidential business information including customer lists, finances, methodologies, processes and

pricing.  *Id.* at ¶ 32.

**B.  Nepenthe Laboratory Services, LLC**

Defendant Nepenthe Laboratory Services, LLC ("Nepenthe") is an Oregon company that

provides drug testing laboratory services.  Baumgartner Decl. ¶¶ 2, 8.  ECF No. 23.  As such,

Nepenthe is a direct competitor of Millennium.  *Id.*; Compl. ¶ 80.  Nepenthe operates in Alaska,

Washington, Oregon, California, Nevada, and Idaho.  Pl. Mot. Ex. 5, at 5 (Baumgartner Dep.).[1]

ECF No. 53-6.  Brian Baumgartner is the President of Nepenthe.  Baumgartner Decl. ¶ 1.

### C.  Millennium's Non-Competition and Non-Solicitation Agreements

Clinical drug testing is a "highly regulated" and "fiercely competitive" industry.  Compl.

¶ 17.  "There are often dozens of companies competing for the same customer accounts."  *Id.* at ¶

30.  To protect confidential information and business relationships, Territory Managers enter into

Confidentiality, Non-Disclosure, Non-Competition and Intellectual Property Agreements with

Millennium.   These Agreements contain provisions that persist after the termination of the

employee-employer relationship, as relevant to the present case, limit the former employee's

ability to solicit Millennium customers (the "Non-Solicitation Clause") and limit the former

employee's ability to compete with the Millennium, (the "Non-Competition Clause").  The Non-

Solicitation Clause provides:

> Except as provided for below, for a period of one (1) year following Employee's
> termination of employment with Employer, regardless of which party terminates
> the employment relationship or the reasons for such termination, Employee will not
> knowingly, directly or indirectly, solicit, divert, or take away, or attempt to solicit,
> divert or take away, a customer of the Company that Employee had contact with or
> did business with (in person or through the direction or supervision of others) in the
> last two years of the Employee's employment with the Company, nor shall
> Employee participate in soliciting or inducing such a customer to buy a competitive
> product or service.  This restriction is understood to be inherently reasonable in its
> geography because it is limited to the places where said customer(s) do business.

Compl. Ex. A, at 6; Ex. C, at 6.[2]

The Non-Competition Clause provides:

> Except as provided for below, for a period of one (1) year following Employee's
> termination of employment with Employer, regardless of which party terminates
> the employment relationship or the reasons for such termination, Employee shall
> not, directly or indirectly, provide services that are the same or similar in function

---

[1] Page numbers for deposition transcripts are given according to the page of the submitted exhibit, rather than the page of the unredacted transcript.
[2] The Non-Solicitation Clause found in Exhibit B of the Complaint is substantially identical.  Compl. Ex. B, at 6.

or purpose to the services Employee provides to the Employer during the last two years of employment (whether as an owner, shareholder, officer, director, manager, supervisor, employee or agent) to any business that is competitive with any aspect of Employer's business as to which Employee had material business-related involvement or about which Employee received Confidential Information during the last two years of employment in any state, province, or other jurisdiction in which Employee performed services or otherwise assisted the Employer in doing business or preparing to do business during the last two years of employment (the "Restricted Area").  A business shall be considered "competitive" if its products or services would compete with or displace the products and/or services that the Company was engaged in providing or developing at the time Employee's employment with the Company ended.  Employee specifically acknowledges and agrees that the foregoing restriction on competition with Employer will not prevent Employee from obtaining gainful employment following the termination of his employment with Employer and is a reasonable restriction to protect the Company's legitimate business interests.

Compl. Ex. A, at 7; Ex. B, at 7-8; Ex. C, at 7.

### D.  David Barba and Justin Monahan

David Barba was offered a position as a Sales Representative with Millennium on October 23, 2014.  Barba Decl. ¶ 3.  ECF No. 21.  On October 24, 2014, Barba accepted the offer and signed an Agreement Regarding Confidentiality, Non-Disclosure and Intellectual Property Assignment, which contained the Non-Competition Clause and Non-Solicitation Clause described in the previous section (the "2014 Barba Agreement").  Compl. Ex. A.  Barba worked in the Portland South territory.  Knee Decl. ¶ 5.

In November 2017, Barba was promoted to Senior Director of Managed Markets for Millennium, an executive position with national duties.  Barba Decl. ¶ 5.  In August 2018, Barba asked to return to a field sales position.  *Id.* at ¶ 6.  Millennium accommodated this request and Barba was made the Territory Manager for the Portland South territory.  *Id.* at ¶ 7.  On August 27, 2018, prior to his return to a field sales position and at Millennium's request, Barba signed a second Confidentiality, Non-Disclosure, Non-Competition and Intellectual Property Assignment (the

"2018 Barba Agreement"). *Id.*; Compl. Ex. B.  Barba began work as Territory Manager for Portland South on September 1, 2018.  Barba Decl. ¶ 7.

Justin Monahan was offered a position as a Training Customer Support Specialist with Millennium on July 8, 2014.  Monahan Decl. ¶ 2.  ECF No. 22.  On July 9, 2014, Monahan signed a Confidentiality, Non-Disclosure, Non-Competition, and Intellectual Property Assignment (the "Monahan Agreement") and began working for Millennium on July 11, 2014.  Monahan Decl. ¶¶ 2-3; Compl. Ex. C.  Monahan was subsequently promoted to Territory Manager and assigned to the Portland North territory.  Knee Decl. ¶ 8; Monahan Decl. ¶ 4.

Barba and Monahan were the only Territory Managers assigned to Oregon and "two of the most successful Territory Managers at Millennium."  Compl. ¶ 59; Knee Decl. ¶ 13.  Although they were responsible for distinct territories, Barba and Monahan worked closely together, exchanging "information and ideas for maintaining current accounts and gaining new accounts," and "often collaborated on certain accounts that had overlapping locations in each other's territories."  Knee Decl. ¶ 14.  As Millennium Territory Managers, Barba and Monahan were paid monthly commissions in addition to their salaries.  Compl. ¶¶ 43, 52.

In June 2020, Monahan requested a promotion from his supervisor and was turned down. Supp. Knee Decl. ¶ 22.  In July 2020, Monahan contacted Baumgartner to inquire about job opportunities at Nepenthe.  Pl. Mot. Ex. 3, at 50 (Monahan Dep.).  ECF No. 53-4.  During this meeting, Monahan told Baumgartner about his contract with Millennium and provided Baumgartner with a copy of the Monahan Agreement.  Baumgartner Dep., at 16.  Monahan told Baumgartner that Barba was also interested in a position with Nepenthe.  *Id.* at 18.  Nepenthe was interested in hiring Barba and Monahan to capture market share from Millennium.  Pl. Mot. Ex. 4, at 13 (Goodman Dep.).  ECF No. 53-5.

Barba and Monahan met with Baumgartner and Clark Goodman, who was a member of the Nepenthe board, on August 18, 2020 to discuss Barba and Monahan's planned departure from Millennium. Monahan Dep., at 50-51. During this meeting, Barba and Monahan told Baumgartner and Goodman about the sort of business Nepenthe might bring in if it were to hire Barba and Monahan. Pl. Mot. Ex. 15, at 3-4 (Monahan II Dep.). ECF No. 53-16.

Barba, Monahan, Baumgartner, and Goodman met for a second time on August 24, 2020. Baumgartner Dep., at 19. During this second meeting, they discussed Barba and Monahan's restrictive covenants with Millennium and opted to seek legal advice concerning those agreements. *Id.* at 21-22.

On September 21, 2020, Barba and Monahan submitted nearly simultaneous notices of resignation, both of which would become effective on October 2, 2020. Bleicher Decl. Ex. 516, 521. ECF Nos. 63-16, 63-21. On September 22, 2020, Barba called his supervisor, Jake Knee, and directly informed him that he planned to resign from Millennium. Knee Decl. ¶ 18. When Knee asked Barba if he could rely on Monahan to fill Barba's shoes, Barba replied "that he did not think that would be a good idea." *Id.* Minutes later, Knee received a call from Monahan, who informed Knee that he was also resigning from Millennium. *Id.* at ¶ 19. Both Barba and Monahan told Knee that they did not have employment prospects at another company. *Id.* The Court heard testimony on the issue of whether Barba and Monahan had employment prospects at the time of their resignations and, after weighing the credibility of the witnesses, the Court concludes that Barba and Monahan had concrete arrangements to work for Nepenthe prior to September 21, 2020, whether or not those arrangements were formal offers of employment.

On September 22, 2020, Barba and Monahan each received a letter from Brian Fowler, General Counsel for Millennium. Bleicher Decl. Ex. 504, 505. ECF Nos. 63-4, 63-5. The letters

advised Barba and Monahan of the "continuing, post-employment obligations you owe Millennium." *Id.* In particular, the letters reminded Barba and Monahan of the restrictive covenants of their Agreements and specifically of the Non-Competition Clauses and the Non-Solicitation Clauses. *Id.* Barba and Monahan were warned that "Millennium expects you to fully honor your contractual obligations," and was "prepared to defend its rights should you choose to breach those obligations in any way, and will do so to the fullest extent necessary to protect itself." *Id.* The letters closed with a warning:

> Millennium expects you to inform your new employer about these continuing obligations. If Millennium suspects any breach of your obligations by you or inducement of breach by your new employer, Millennium will take any and all action necessary against you and your new employer to enjoin the breach, and seek all available remedies for any harm caused by the breach.

Bleicher Decl. Ex. 504, at 4; Ex. 505, at 4.

Barba and Monahan forwarded the letters from Fowler to Baumgarnter on September 23, 2020. Pl. Mot. Ex. 2, at 38 (Barba Dep.) ECF No. 53-3; Monahan Dep., at 52.

On September 29, 2020, Barba and Monahan flew to Seattle on Nepenthe's private jet to meet with Baumgartner, Goodman, and Nepenthe's attorneys. Baumgartner Dep., at 22; Goodman Dep., at 12.

Barba and Monahan left Millennium's employ on Friday, October 2, 2020. Compl. ¶ 80. On Monday, October 5, 2020, Barba and Monahan sent emails to Millennium announcing that the Non-Competition Clauses of their Agreements with Millennium were voidable and void. Bleicher Decl. Ex. 517; Ex. 554. Fowler responded that Millennium disagreed with Barba and Monahan's positions and "intends to enforce its rights fully." *Id.*

On October 7, 2020, Nepenthe extended formal offers of employment to Barba and Monahan. Baumgartner Dep., at 23. At Nepenthe, Barba and Monahan are each paid a salary of

$360,000 per year for the first year.  *Id.* at 25.  In their second year of employment with Nepenthe, Barba and Monahan will received 35% of the gross receipts from each new account that they generate or manage.  *Id.*

Following Barba and Monahan's departure Millennium, several Millennium clients have discontinued their relationships with Millennium and transferred their business to Nepenthe.  The Court heard extensive testimony on this issue and, after weighing the evidence and assessing the credibility of the witnesses, the Court concludes that there is substantial evidence that Barba and Monahan have solicited Millennium customers, both directly and indirectly, to transfer their business to Nepenthe.

## II.    Procedural Background

Millennium brought this action on November 23, 2020.  ECF No. 1.  On the same day, Millennium filed a motion for a temporary restraining order, seeking to enforce its post-employment covenants with Barba and Monahan.  ECF No. 2.  On December 4, 2020, the Court denied the motion for a temporary restraining order.  ECF No. 28.  The Court set a schedule for accelerated discovery for a preliminary injunction hearing.

On March 2, 2021, Millennium filed its Motion for Preliminary Injunction and Defendants filed their brief in opposition to the Motion.  ECF Nos. 43, 53.[3]  The Court held an evidentiary hearing on March 4 and March 17, 2021, at which it took testimony from witnesses, received exhibits into evidence, and heard argument from the parties.  ECF Nos. 54, 64.

## DISCUSSION

Millennium brings claims for (1) breach of contract against Barba and Monahan, alleging violation of their contractual obligations concerning confidentiality, non-disclosure, non-

---

[3] Defendants submitted an Amended Brief in Opposition the Motion for Preliminary Injunction on March 15, 2021. ECF No. 58.

competition, and non-solicitation; (2) tortious interference with contract against Barba, Monahan

and Nepenthe; (3) tortious interference with economic relations against Barba, Monahan, and

Nepenthe; (4) breach of the duty of loyalty against Barba and Monahan; (5) and civil conspiracy

against all Defendants.

Millennium's Motion for Preliminary Injunction concerns its claims for breach of contract

against Barba and Monahan.   For the reasons discussed below, the Court concludes that

Millennium has established a likelihood of success on the merits and a likelihood of irreparable

harm.  The balance of equities tips slightly in favor of Millennium and the public interest does not

strongly favor either side.

## I.    Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood

of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale"

formulation of the test, serious questions going to the merits of their claims.  *Winter*, 555 U.S. at

20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32.  However, a court's decision on a motion

for preliminary injunction is not a ruling on the merits of the claim.  *Sierra On-Line, Inc. v. Phoenix

Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

In this case, Millennium brings claims for breach of contract against Barba and Monahan

alleging violation of the restrictive covenants concerning refraining from use of confidential

information, and violation of the Non-Competition Clauses and the Non-Solicitation Clauses of

the Monahan Agreement and the Barba Agreements.

"To establish a breach of contract claim under Oregon law, a plaintiff must show: (1) the

existence of a contract; (2) its relevant terms; (3) the plaintiff's full performance and lack of breach;

and (4) the defendant's breach resulting in damage to the plaintiff."  *Gunderson LLC v. BCG*

*Props. Group, Inc.*, Case No. 3:19-cv-01569-AC, 2020 WL 1529356, at *5 (D. Or. Mar. 30, 2020) (internal quotation marks and citation omitted).  In this case, the parties do not dispute the existence of a contract in the form of the Agreements.  Instead, the dispute centers on the meaning of the terms of the Agreements and, most critically, whether Barba and Monahan breached the Agreements, thereby damaging Millennium.

As a preliminary matter, the Court concludes that Millennium has not met its burden in showing that Barba or Monahan misappropriated or misused any confidential information of Millennium, independent of the alleged violations of the Non-Competition and Non-Solicitation Clauses.  This is not to say that no such evidence exists or that it will not be found in a more complete course of discovery.  But the practical interests of the parties, as reflected by their arguments and their presentation of the evidence, are more concerned with the Non-Competition and Non-Solicitation Clauses of the Agreements and so this Order primarily concerns itself with those issues.

### A.  The Non-Competition Clauses

A non-competition agreement is meant to mitigate the risk that a former employee could use propriety information he acquired as an employee to divert all or part of the employer's business and "goes beyond direct solicitation of customers and explicit disclosure of confidential information." *Ocean Beauty Seafoods v. Pac. Seafood Group Acquisition Co., Inc.*, 648 F. App'x 709, 711 (9th Cir. 2016).  "To be enforceable under Oregon law, a covenant not to compete must meet both the requirements of Oregon Revised Statute § (O.R.S.) 653.295 and Oregon's common law governing restraints on trade." *Brinton Bus. Ventures, Inc. v. Searle*, 248 F. Supp.3d 1029, 1032 (D. Or. 2017).

**1.   The Non-Competition Clauses are voidable under ORS 653.295, but are not void.**

Defendants contend that Millennium cannot meet its burden to show a likelihood of success on the merits because the Non-Competition Clauses of the Monahan Agreement and the Barba Agreements are void.

Under ORS 653.295, a noncompetition agreement entered into between an employer and employee "is voidable and may not be enforced by a court of this state unless," *inter alia*, "[t]he employer informs the employee in a written employment offer received by the employee at least two weeks before the first day of the employee's employment that a noncompetition agreement is required as a condition of employment," or "[t]he noncompetition agreement is entered into upon a subsequent bona fide advancement of the employee by the employer."  ORS 653.295(1)(a)(A), (B).

In this case, Monahan received a written offer of employment from Millennium on July 8, 2014.  Monahan Decl. Ex. 1.  That offer letter informed Monahan, for the first time, that his employment was contingent upon his signing the Monahan Agreement, including the Non-Competition Clause.  Monahan Decl. ¶ 2.  Monahan signed the Agreement on July 9, 2014 and began work on July 11, 2014.  *Id.* at ¶ 3.  Because Monahan was not provided with the terms of the Agreement two weeks before he began work, the Monahan Agreement is voidable under ORS 653.295(1)(a)(A).

Barba received a written offer of employment from Millennium on October 23, 2014.  Barba Decl. Ex. 1.  As with Monahan, this was the first time Barba learned that the employment was contingent upon his signing the 2014 Barba Agreement.  Barba Decl. ¶ 3.  Barba signed the Agreement on October 24, 2014 and began work the same day.  *Id.* at ¶¶ 3-4.  As with Monahan, Barba was not provided with written notice of the Non-Competition Clause two weeks before

starting work as required by ORS 653.295(1)(a)(A) and the Court concludes that the 2014 Barba Agreement is voidable.

Barba was subsequently promoted to a national executive position with Millennium in 2017 but requested a return to field sales work in August 2018. Barba Decl. ¶¶ 5-6. As a condition of his return to field sales work, Barba was presented with the 2018 Barba Agreement, with the same restrictive covenants as the 2014 version, which Barba signed on August 27, 2018. *Id.* ¶ 7. After considering the record, the Court concludes that Barba's transfer from the national position to Territory Manager was not a "bona fide advancement" under ORS 653.295(1)(a)(B) but instead constituted a voluntary demotion. *See, e.g.,* Bleicher Decl. Ex. 512 (showing the position of Senior Director of Managed Markets in the Millennium corporate hierarchy). Accordingly, the 2018 Barba Agreement is, like its predecessor Agreement, voidable.

A finding that the Agreements were voidable does not end the analysis. Oregon law treats "noncompetition agreements—even those that do not strictly comply with the new statutory requirements—as *presumptively valid*, rather than void *ab initio*." *Bernard v. S.B., Inc.*, 270 Or. App. 710, 719 (2015) (emphasis in original). "Put differently, the change to 'voidable' means that an employee who wants to be relieved of what the employee believes to be an unenforceable noncompetition obligation must take affirmative steps to 'avoid' that obligation; otherwise, it remains valid." *Id.* at 718.

In *Brinton*, this Court observed that ORS 653.295 "does not provide a deadline by which an employee must express his intent to void a non-competition agreement," and Oregon appellate opinions "do not expressly state what point is too late for an employee to void an agreement." *Brinton*, 248 F. Supp.3d at 1035. However, in *Bernard*, the Oregon Court of Appeals held that because a voidable contract "had not been voided at the time that defendants sought to invoke the

contract, the agreement was valid and in effect." *Bernard*, 270 Or. App. at 719. "This strongly suggests that the Oregon Court of Appeals interpreted O.R.S. 653.295 to require a plaintiff to void a non-competition agreement prior to the defendant's effort to enforce the agreement." *Brinton*, 248 F. Supp.3d at 1035. In *Brinton*, this Court found that "because [the defendant] expressed his intent to void the non-competition agreement only after [the plaintiff] sought to enforce it and once [defendant] had already been competing against [the plaintiff] for five months, [the defendant] did not validly void the agreement." *Id.*

In this case, Barba and Monahan submitted their notices of resignation on September 21, 2020. On September 22, 2020, they each received a letter from Millennium's attorney reminding them of their post-employment obligations and restrictions under the Agreements and warning them that Millennium would take legal action to enforce the Agreements. Barba and Monahan left Millennium's employ on Friday, October 2, 2020. On October 5, 2020, Barba and Monahan each sent an email to Millennium purporting to void the Non-Competition Clauses of their respective Agreements.

The Court concludes that the September 22, 2020 letters from Millennium's general counsel were an effort to enforce the Agreements by Millennium and that, by its prompt action, Millennium forestalled Barba and Monahan's subsequent efforts to void the Agreements on October 5, 2020. This is consistent with this Court's prior decision in *Brinton*, where the dispositive fact was that the defendant did not attempt to void the contract until after the plaintiff sought to enforce the disputed provision. *Brinton*, 248 F. Supp.3d at 1035. The fact that the *Brinton* defendant had been in violation of the non-competition agreement for months at the time of the enforcement action only bolstered the Court's holding. Nor does the enforcement action necessarily need to be the filing of a lawsuit, as Defendants suggested during the hearing. *See*

Page 14 –OPINION & ORDER

*Bernard*, 270 Or. App. at 719 (the defendant "sought to invoke" the non-competition agreement by contacting the plaintiff and their new employer "to remind them of plaintiff's contractual obligations."); *Brinton*, 248 F. Supp.3d at 1035 (the enforcement action by defendant was a threat of legal action, rather than the commencement of a lawsuit.).

In sum, the Court concludes that the Non-Competition Clauses of the Agreements are voidable under ORS 653.295, but were not timely voided. Barba and Monahan will therefore be bound by their respective Agreements, provided they satisfy the common law requirements of reasonableness.

**2. The Non-Competition Clauses are reasonable.**

A non-competition agreement must meet three requirements to be enforceable under Oregon law: "(1) it must be partial or restricted in its operation either to time or place; (2) it must be on some good consideration; and (3) it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public." *Nike, Inc. v. McCarthy*, 379 F.3d 576, 584 (9th Cir. 2004) (quoting *Eldridge v. Johnson*, 195 Or. 379 (1952)). "To satisfy the reasonableness requirement, the employer must show as a predicate that it has a legitimate interest entitled to protection." *Id.* (internal quotation marks and citation omitted, alterations normalized).

With respect to the existence of a protectable interest, an employee's "general knowledge, skill, or facility acquired through training or experience while working for an employer," are insufficient to support a restrictive covenant, even if "the on-the-job training has been extensive and costly." *Nike, Inc.*, 379 F.3d at 585 (internal quotation marks and citations omitted). "Nonetheless, an employer has a protectible interest in information pertaining especially to the employer's business," including customer lists and other "specialized information relating to

customers." *Id.* In this case, Millennium has produced evidence and testimony demonstrating that Barba and Monahan possessed considerable and specialized information concerning Millennium's business and, in particular, Millennium's relationships with its customers. The Court therefore concludes that Millennium has established a legitimate interest sufficient to support a non-competition agreement.

Turning to the other requirements laid out in *Nike, Inc.*, the Non-Competition Clauses are limited in both geographical scope and in time, lasting only one year after the termination of the employment relationship. They were offered on good consideration, in the form of Barba and Monahan's salaries and commissions. With respect to the final factor, the Court concludes that the scope of the Non-Competition Clause is not, on its face, so large as to implicate the public interest although, as discussed below, courts may reform a restrictive covenant in crafting an injunction. In sum, the Court concludes that the Non-Competition Clauses of the Monahan Agreement and the Barba Agreements are reasonable and enforceable.

### 3. Breach of the Non-Competition Clauses

Millennium has provided evidence that the Barba and Monahan have breached the Non-Competition Clauses of their respective Agreements. There is no meaningful dispute that Nepenthe is a direct competitor of Millennium or that Barba and Monahan are providing substantially the same services to Nepenthe that they previously provided to Millennium or that they are providing those services in Oregon and those areas of Washington covered by the Portland North territory. Final resolution of Millennium's claims must await further litigation or even trial, but the Court concludes that Millennium has carried its burden of proof and persuasion for purposes of a preliminary injunction.

### B.  The Non-Solicitation Clauses

Unlike non-competition clauses, a non-solicitation agreement is not subject to the notice requirements of ORS 653.295.  *See* ORS 653.295(4)(b) (the strictures of ORS 653.295(1) and (2) do not apply to "[a] covenant not to solicit employees of the employer or solicit or transact business with customers of the employer.").  In this case, Defendants concede that the Non-Solicitation Clauses are at least "arguably valid," but contend Millennium cannot demonstrate that either Barba or Monahan violated their non-solicitation obligations.  Def. Am. Br., at 1.  ECF No. 58.

The Court heard a great deal of testimony on this point in an evidentiary hearing lasting two full days.  The record and credible testimony indicate that Barba and Monahan knowingly solicited Millennium customers on behalf of Nepenthe in violation of the Non-Solicitation Clauses of their Agreements.  The evidence suggests that this solicitation took the form of direct solicitation of Millennium customers, including "close personal friends" of Barba and Monahan who also happened to be Millennium customers, and of Barba and Monahan indirectly soliciting the clients they had serviced on behalf of Millennium by using one another as proxies.

Whether Millennium's claims for violation of the Non-Solicitation Clauses will ultimately be borne out by more complete discovery and proved to the trier of fact remains to be seen, but the Court concludes that Millennium has met its burdens of proof and persuasion concerning the alleged breach of the Non-Solicitation Clauses.

### II.  Irreparable Harm

The Ninth Circuit has held that "[a]n enforceable noncompete agreement affords fair protection to a legitimate interest of the former employer," and a breach of the agreement causes harm to the former employer.  *Ocean Beauty Seafoods*, 648 F. App'x at 711.  "Because this harm is intangible and difficult to quantify, it qualifies as irreparable."  *Id.* (citing *Rent-A-Center, Inc. v.*

*Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  The threatened

harm cannot, however, be speculative.  *Id.*

In the present case, Millennium has produced evidence that it has suffered the loss of

longstanding client relationships as a result of Barba and Monahan's post-employment conduct.

Millennium has also produced evidence that it is threatened with further loss of customer

relationships, business, and goodwill in the absence of injunctive relief.  This is sufficient to

establish irreparable harm in the preliminary injunction context.  *See Stuhlbarg Int'l Sales Co. v.*

*John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of

prospective customers or goodwill certainly supports a finding of the possibility of irreparable

harm.").

### III.    Balance of Equities

Under the "balance of equities" analysis, a court must "balance the competing claims of

injury" and "consider the effect on each party of the granting or withholding of the requested

relief."  *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted).  In this case, the

terms of the injunction set forth below will impose a burden on Defendants but will not bar

Monahan or Barba from working in the clinical drug testing industry, so long as they work outside

of the designated geographic area and refrain from soliciting business from entities that were

active, bona fide customers of Millennium at the time of Barba and Monahan's departure from the

company.  Furthermore, as discussed below, this injunction is limited in time as well as geographic

scope.  The Court therefore concludes that the balance of the equities favors the injunction on the

terms set forth below.

## IV.     Public Interest

In cases involving restraints on trade, Oregon law reflects a balance between the competing public policies.  "The freedom to pursue one's chosen occupation is in tension with freedom of contract, and the advocate of competition must grapple with the argument that noncompete agreements are economically advantageous because they protect costly investments."  *Ocean Beauty Seafoods*, 648 F. App'x at 711-12.  Because the restrictive covenants in the Monahan Agreement and the Barba Agreements comport with Oregon law, "an injunction enforcing it is not antithetical to any public interest."  *See Id.*  The Court therefore concludes that the public interest does not weigh strongly in favor of either side.

## V.      Scope of the Injunction

For the reasons discussed above, the Court concludes that Millennium has demonstrated that it is entitled to a preliminary injunction to enforce its rights under the Non-Solicitation Clauses and the Non-Competition Clauses of the Monahan Agreement and the Barba Agreements.  In crafting an injunction, courts are empowered to reform covenants in restraint of trade to ensure that the interests of the former employer are protected without infringing on the public interest or unduly burdening rights of the former employee to pursue his or her profession.  *See Brinton*, 248 F. Supp.3d at 1037-39 (granting an injunction but reforming a non-competition clause to limit the size of the restricted area and reforming a non-solicitation clause to remove prohibitions against soliciting prospective customers of the former employer).

In crafting the injunction, the Court must first resolve the question of which Millennium customers are covered by the Non-Solicitation Clauses.  In briefing and arguing this motion, Millennium advanced an insupportably broad definition that encompasses inactive customers, prospective customers, and entities with whom neither Barba nor Monahan had any meaningful

contact during their time with Millennium.  In *Oregon Psychiatric Partners, LLP v. Henry*, 293 Or. App. 471, (2018), the Oregon Court of Appeals considered the plain meaning of "customers of the employer" in context of ORS 653.295(4)(b) and found that the phrase "refers to those people with an active or ongoing relationship with the employer and does not include former or merely incidental patrons." *Id.* at 476.  "[B]y permitting agreements that prohibit former employees from soliciting or transacting business with 'customers of the employer,' the legislature appears to have intended for ORS 653.295(4)(b) to allow an employer to enforce an agreement not to solicit or transact business with persons or entities who would reasonably be expected to return to the employer for purposes of doing business when the employer-employee relationship ended." *Id.* at 479-80.

The Court concludes that this is a useful and reasonable definition, especially in light of the evidence that laboratory testing is a highly competitive industry in which Millennium is only one of numerous competing firms.  The term "Covered Customer" should therefore be understood to mean those Millennium customers within the Portland North and Portland South territories whose accounts (1) were directly serviced by either Barba or Monahan during the last two years of their employment with Millennium and (2) who had active accounts and ongoing business with Millennium as of October 2, 2020.  This does not include prospective customers or entities with whom Barba or Monahan had only fleeting or incidental contact.

In geographic terms, Barba and Monahan were the Territory Managers for Portland North and Portland South, which together covered all of Oregon and a portion of Washington around the city of Vancouver.  The record indicates that Barba and Monahan worked closely with one another and were each familiar with Millennium's operations and customers in both territories.  The non-competition portion of the injunction will therefore cover the entire State of Oregon and that

portion of the State of Washington which was part of Millennium's Portland North territory. This is broad enough to protect Millennium's interests, but not so broad that it will prevent Barba or Monahan from pursuing their chosen profession or prevent them from working for Nepenthe in one of the other territories where Nepenthe provides services.

The period of the injunction will run for one year from the date of this Order, to provide Millennium with the full benefit of the Non-Competition and Non-Solicitation Clauses. *See Ocean Beauty Seafoods*, 648 F. App'x at 712 (a court may, in equity, toll the period of a non-competition agreement to ensure that the former employer is not deprived of the benefit of the contract).

## VI. Bond

Rule 65 provides that a court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ P. 65(c). In this case, the Court concludes that a bond of $200,000.00 is sufficient and Millennium shall be required to provide security in that amount.

## CONCLUSION

Plaintiffs' Motion for Preliminary Injunction, ECF No. 53, is GRANTED on the following terms:

Defendants David Barba and Justin Monahan are hereby RESTRAINED and ENJOINED for a period not to exceed one (1) year from the date of this Order from directly or indirectly providing services to Nepenthe Laboratory Services, LLC in the State of Oregon or those portions of the State of Washington that were part of Millennium's Portland North territory when those services are the same or similar in function or purpose to the services Barba and Monahan provided

to Millennium during the last two years of their employment with Millennium, consistent with the Non-Competition Clauses of the Monahan Agreement and the Barba Agreements.

Defendants Barba and Monahan are further RESTRAINED and ENJOINED for a period not to exceed one (1) year from the date of this Order from directly or indirectly soliciting, diverting, or taking away, or attempting to solicit, divert, or take away any Covered Customer of Millennium, as that term is defined in this Order, consistent with the Non-Solicitation Clauses of the Monahan Agreement and the Barba Agreements.  Barba and Monahan are likewise enjoined from participating in soliciting or inducing a Covered Customer to buy a competitive product or service.

Finally, the Court DIRECTS Plaintiff to place $200,000.00 with the Clerk of Court for deposit in the Treasury Registry Fund per Local Rule 67-1(b) no later than 4:30 p.m. on April 7, 2021 to serve as security for this preliminary injunction.  In the alternative, Plaintiff may obtain a non-cash bond certificate in the amount of $200,000.00 and file it with the Clerk of Court no later than 4:30 p.m. on April 7, 2021.

It is so ORDERED and DATED this ____5____ day of April 2021.


_____
Marco A. Hernandez
Chief U.S. District Judge